IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| JOHN MURRAY, et al. on behalf of themselves and all other similarly situated individuals<br>Plaintiffs,<br>v.<br>TYSON FOODS, Inc.<br>Defendant. | Case No. 08-4001 |

## ORDER

Before the Court is Defendant Tyson Foods' Motion for Partial Summary Judgment, pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D). For the reasons set forth below, the Motion for Summary Judgment [#33] is GRANTED.

## BACKGROUND

Plaintiffs filed a Three-Count Original Class Action Complaint against Tyson alleging that they had not been paid all wages purportedly due to them under the Illinois Minimum Wage Law ("IMWL"), the Illinois Wage Payment and Collection Act ("IWPCA"), and federal law pursuant to the Fair Labor Standards Act ("FLSA"). Specifically, Plaintiffs allege that the class members were not compensated for all of their time spent working on behalf of Tyson at the pork processing facility in Joslin, Illinois, in violation of Illinois statutes. The named Plaintiffs also brought individual actions under Fair Labor Standards Act ("FLSA"), alleging that because Tyson failed to pay employees the required

amount of overtime at the statutory rate, Tyson must reimburse the employees not only for the unpaid overtime wages, but also for liquidated damages in an amount equal to the amount of unpaid overtime wages.

On June 3, 2008, Tyson moved to dismiss a portion of the Complaint and on October 31, 2008, this Court entered its Order pertaining to that motion. In its motion, Tyson argued, in part, that Count II should be dismissed because Plaintiffs did not allege that they were due wages pursuant to a contract or agreement. In addition, Tyson made reference to a collective bargaining agreement ("CBA") and contended that, under the CBA, Plaintiffs' IWPCA claim and IMWL claim would fail because they would be preempted by § 301 of the Labor-Management Relations Act, 29 U.S.C. § 185.

In denying Tyson's Motion to Dismiss Count II, the Court concluded that Plaintiffs and Tyson had an employment agreement whereby Tyson agreed to pay employees an hourly rate for work performed on its behalf. The Court noted that because Plaintiffs' Complaint did not make reference to the CBA and because Plaintiffs argued that the CBA was entirely unnecessary to establish or prove its state law claims, the Court could not consider the CBA under the motion to dismiss standards. Despite denying Tyson's Motion to Dismiss Count II, the Court stated that it encouraged Tyson to file a prompt Motion for Summary Judgment if the CBA was applicable to the issues in the action.

## JURISDICTION

The parties do not dispute that this Court has jurisdiction over this action. The Court has jurisdiction over Plaintiffs' federal claim because it is being

2

brought pursuant to the Fair Labor Standards Act, 29 U.S.C. 216(b), and because it raises a federal question pursuant to 28 U.S.C. § 1331. The Court also has jurisdiction over the Plaintiffs' state law claims pursuant to 28 U.S.C. § 1332(d) because Plaintiffs allege that the aggregate claims of the individual class members exceed the jurisdictional amount and that Plaintiffs are citizens of Illinois while Tyson is a Delaware corporation whose principal place of business is in Springdale, Arkansas.

## STANDARD OF REVIEW

Summary judgment should be granted when the pleadings and evidence, viewed most favorably to the nonmovant, "show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Cain v. Lane*, 857 F.2d 1139,1142 (7th Cir. 1988).

## DISCUSSION

The Supremacy Clause of Article VI of the United States Constitution grants to Congress the power to preempt state law. *Kohl's Food Stores, Inc. v. Hyland,* 32 F.3d 1075, 1077 (7th Cir. 1994). Congress exercised this power by enacting § 301(a) of the LMRA, 29 U.S.C. § 185(a), which provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

This section provides federal court jurisdiction over controversies involving CBAs and also authorizes federal courts to fashion a body of federal law for the enforcement of these agreements. *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 403 (1988). In order to ensure uniform interpretation of collective bargaining agreements, Section 301 requires that federal rules of law be applied. *Id.* at 403-04. The remedy under Section 301 is exclusive; no action to enforce such an agreement may be based on state law. *Nat'l Metal Crafters v. McNeil,* 784 F.2d 817, 823 (7th Cir. 1986).

In order to determine whether a party's state law claims are preempted under this section, courts look to see whether the resolution of the claim depends on the meaning of, or requires the interpretation of, a CBA. *Lingle,* 486 U.S. at 405-06. "Section 301 governs claims founded directly on rights created by collective-bargaining agreements, and also claims 'substantially dependent on analysis of a collective-bargaining agreement.'" *Caterpillar Inc. v. Williams,* 482 U.S. 386, 394 (1987) (internal citation omitted).

This is relatively broad language, but the Supreme Court has made clear that preemption is not to be applied in every situation where a CBA is part of the picture. For example, it is clear that the existence of a remedy in a CBA does not deprive a party of separate independent remedies available under state law. *Lingle,* 486 U.S. at 409-10. "[Section] 301 pre-emption merely ensures that federal law will be the basis for interpreting collective-bargaining agreements, and says nothing about the substantive rights a State may provide to workers when adjudication of those rights does not depend upon the interpretation of

4

such agreements." *Id.* at 409. Therefore, when the CBA "is merely a tangential consideration in the resolution of an otherwise independent state law action or where resort to its provisions is merely pro forma, we can say with confidence that such consultation does not trigger § 301 preemption." *Loewen Group Intern., Inc. v. Haberichter*, 65 F.3d 1417, 1422 (7th Cir. 1995). Whether Section 301 operates to preempt a state law claim entails a case-by-case factual analysis. *In re Bentz Metal Prods. Co.*, 253 F.3d 283, 285 (7th Cir. 2001).

**IMWL and IWPCA Claims**

We now turn to the case at hand. In order to see if Plaintiffs' state law claims turn on a portion of the CBA, we first examine the elements of each of the state law claims. In Count I of its Complaint, Plaintiffs contend that Tyson violated the IMWL. Plaintiffs assert that Tyson failed to record all of their work time, and that had that work time been recorded as paid time, at least some Plaintiffs would have worked over forty hours and been entitled to overtime wages, but because this time was not properly recorded, they were not paid in compliance with the IMWL. (Compl. ¶¶ 43, 45). In Count II of its Complaint, Plaintiffs contend that Tyson failed to pay them their hourly rate of pay for all hours of work, i.e. for the time spent preparing, donning, doffing, and sanitizing sanitary equipment and supplies necessary for the performance of their work, in violation of the IWPCA. (Compl. ¶¶ 48-49).

Tyson argues that the adjudication of these claims would necessarily involve construction and interpretation of various provisions of the CBA, specifically the definition of "work time," and would further require an

5

understanding of what was agreed to as part of the CBA. The CBA in effect from July 23, 2006 through July 24, 2011, states, in part, "[w]ork time will be computed from the time employees on a position commence their work until the time worked is stopped at a position, and will be computed to the nearest minute." (*See* Ex. 2 to Declaration of Allan Schuetze, p. 16). Tyson contends that the Court would have to determine what activities are and are not covered under the CBA's definition of "work time", whether Plaintiffs were appropriately paid for their time worked under the CBA's definition of "work time", and then determine how the results of these inquiries conform to the "working time" standards of the IMWL and IWPCA. Tyson further contends that preemption is reinforced by the CBA's language indicating that the union and Tyson expected further bargaining over the issues addressed in the then newly issued *IBP v. Alvarez.*[1] (*See* Declaration of Allan Schuetze, p. 54). Thus, Tyson concludes that Counts I and II are preempted by § 301 of the LMRA.

Plaintiffs argue that because the parties have not had any chance to engage in the discovery process, Tyson's motion is premature. Plaintiffs contend that depositions are necessary to determine: (1) the bargaining history that led to the inclusion of certain terms in the CBA; (2) the meaning of certain terms in the CBA in the view of the signatories to the agreement; (3) whether there is a

---

[1] In that case, decided in 2005, the Supreme Court held that (1) time spent by meat processing plant employees walking between locker rooms and production areas after donning special safety gear in the locker rooms was not excluded from FLSA act coverage by Portal-to-Portal Act; (2) time poultry plant employees spent waiting to doff protective clothes was not a "preliminary or postliminary activity" excluded from FLSA coverage by the Portal-to-Portal Act; and (3) time poultry plant employees spent waiting to don protective gear at start of work day was excluded from FLSA coverage.

6

dispute in the interpretation of the relevant CBA terms; and (4) whether Tyson and the union ever met to discuss and bargain over the effects of *IBP v. Alvarez.*

It is true that purely factual questions pertaining to the conduct of employees and the conduct and motivation of the employer do not require a court to interpret any term of a collective-bargaining agreement. See *Lingle,* 486 U.S. at 407. However, Section 301 governs claims when a provision of the CBA is the subject of the dispute or the dispute is substantially dependent upon an analysis of the terms of CBA. *Caterpillar,* 482 U.S. at 394. (1987). In this particular case, the Court finds that it would have to resort to the CBA in order to resolve the claims asserted against Tyson. In particular, it would have to determine the meaning of the CBA's definition of "work time".

Therefore, because the IMWL and IWPCA claims that are substantially dependent on an analysis of the CBA, specifically the meaning of the term "work time", the Court finds that these claims are preempted by Section 301 of the LMRA. Additionally, as the Court has implicitly concluded that Plaintiffs' state law claims are preempted by Section 301, these claims must be dismissed because Plaintiffs have failed to exhaust their administrative remedies, a procedural perquisite to maintaining a Section 301 action. Despite the grievance procedure outlined in the CBA, Plaintiffs did not file a grievance concerning compensation for time spent performing the duties alleged in the Complaint.

As a result of this Order, the Court has dismissed all counts of the Class Action Complaint involving class members. The only remaining count in the Class Action Complaint is Count III, alleging violation of FLSA. This Count, as

alleged, involves only the named Plaintiffs. Therefore, the Plaintiffs' Motion to Certify Class Pursuant to Federal Rule of Civil Procedure 23 [#3] and Tyson's Motion to Stay the Motion to Certify Class Pursuant to Federal Rule of Civil Procedure 23 and Extend Response Deadline [#35] are deemed MOOT.

## CONCLUSION

For the reasons set forth herein, Tyson's Partial Motion for Summary Judgment [#33] is GRANTED, Plaintiffs' Motion to Certify Class [#3] is MOOT, and Tyson's Motion to Stay the Motion to Certify Class [#35] is deemed MOOT.

This case is referred to the Magistrate for discovery.

ENTERED this 9th day of February, 2009.

s/ Michael M. Mihm
Michael M. Mihm
United States District Judge
